UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES D. GREEN,

        Plaintiff,

     v.                                            Case No. 24-cv-0194-bhl

TRICIA EIKLAND,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Plaintiff James Green, who is confined at the Green Bay Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on a First Amendment claim based on allegations that Defendant Tricia Eikland retaliated against him when she gave him a false conduct report because she knew that he had previously submitted an inmate complaint about her. On November 22, 2024, Defendant moved for summary judgment. For the reasons explained below, the Court will grant the motion and dismiss this case.

### BACKGROUND

      At the relevant time, Green was confined at the Waupun Correctional Institution, where Defendant Tricia Eikland worked as a correctional officer. According to Green, in June and October 2023, Eikland walked away after Green threatened to harm himself. Green explains that he filed an inmate complaint following both incidents, although he withdrew his inmate complaint about the June incident after a gang member, whom he alleges was friendly with Eikland, convinced him to withdraw it. Notwithstanding Eikland's alleged cooperation with gang members, Green submitted an inmate complaint about the October incident, which was still

pending when, on November 24, 2023, Green again threatened self-harm. Green resolved his issues with a supervisor, who then asked Eikland to stand at Green's cell while he attended to other details. Apparently frustrated with Green's actions, Eikland allegedly said to him, in part, "Just kill yourself or file your dumb little lawsuit. I'm not worried about it. I do my job dumbass." According to Green, "that's what led [him] to know . . . [she was] mad that [he] wrote [her] up because [she] allowed [him] to self-harm when [she] walked off. That's what [she] mad about." Dkt. No. 1; Dkt. No. 19-1 at 38.

Shortly after making the alleged comment referencing a lawsuit, Eikland wrote him a conduct report, in which she stated that Green had accused her of "messing with [his] meds and . . . [his] meals." She also reported that Green "threw his bag meal out of the trap, hitting [her] in the upper left thigh area." *Id.* Finally, she stated that Green had threatened her, "stating that he was going to take [her] down" and that she and some other officers "are going to have to retire early." Green asserts that Eikland mischaracterized his comments and actions to get back at him for filing an inmate complaint about the October incident. At his deposition, Green recounted his interaction with Eikland as follows:

> I said, b----, why you f------ talking, she said oh, what you going to do? What, you going to beat my ass? I said no, I ain't going to do nothing to you. I said I ain't going to – I'm going to do worse than that. She's like, oh, so, what, you going to kill me? I said what – why you asking – you seem like you – like you attempting me to do something like that? She said, what, that's what you going to do? I said, no, I'm going to do something worse. I'm going to come for your pocketbook. I'm going to come for your check. She's like all right, whatever. . . . And I bullsh— you not, I'm going to take you, Lange and Manthi job. I'm going to – I'm coming for y'all job. I told her just like that.

Dkt. No. 18-2 at 1.

Green was placed in temporary lockup later that day based on Eikland's assertion that Green had threatened her. In response to the placement notice, Green wrote, "This is the tr[i]o in

2

NWC retaliating against me. I did not threaten[] her I simply told her . . . if anything happens to me ima . . . strike back on them with my p[e]n (By popping paper work)." Dkt. No. 25-2 at 14. About a week later, on November 30, 2023, Green submitted an inmate complaint again asserting that he was being retaliated against. Green stated that he had informed Eikland that he was suicidal and wanted to talk to a supervisor. He further explained that, after talking to a doctor and supervisor, Eikland was called back to his cell to monitor him. He stated that she began to call him stupid and observed that he is always "crying like a baby." According to Green, Eikland said, "What you gonna file your little lawsuit for tryna kill yourself." Green asserted that he then informed her that he knew about "that lil hit yall got on me." He further stated that he is "a gangsta so if anything happen to [him] at the shower [he'd] ball up so [he] don't go to the hole and pop that paper on [them] and guarantee [they] retire early." Green stated that other inmates who overheard their interaction would be willing to give declarations. Dkt. No. 18-5 at 15-17.

The inmate complaint that Green filed about the *October* incident was investigated by Tonia Moon, who recommended that it be dismissed on December 7, 2023, a couple weeks after the interaction at issue in this case,. Moon explained that, based on her review of the hallway video, there was no indication that staff (including Eikland) had heard Green threaten to harm himself. Nowhere in her recommendation does Moon suggest that she contacted Eikland or interviewed her about Green's inmate complaint. Green testified at his deposition that his only basis for believing that Eikland knew that he had filed an inmate complaint about the October incident was that officers "all talk to each other; they all intermingle with each other. They all know. They all know. It's a—they run a secret society . . . They all know what's up." Dkt. No. 17 at ¶¶4-5; Dkt. No. 18-3 at 2.

3

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Green asserts that Eikland mischaracterized his interactions with her and falsely accused him in a conduct report of threatening and assaulting her because he had filed an inmate complaint about her in connection with an incident that happened about a month earlier. Eikland argues that she is entitled to summary judgment on Green's retaliation claim for two reasons: 1) Green has no evidence to prove that, at the time she prepared the conduct report, Eikland knew that he had filed an inmate complaint against her a few weeks earlier; and 2) Green admitted to the conduct that Eikland described in the conduct report. The Court will address each argument in turn.

4

In order "[t]o prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). As to the third factor, the Supreme Court has explained that it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019) (internal quotation marks omitted) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's 'actions colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway")).

1. **A jury could reasonably conclude from Eikland's statements that she knew Green had filed an inmate complaint about her.**

For purposes of this decision, Eikland does not appear to dispute that filing an inmate complaint is activity protected by the First Amendment and that receiving a conduct report is a deprivation that would likely deter First Amendment activity in the future. Accordingly, Green has satisfied the first two elements of the standard. But, according to Eikland, Green's retaliation claim fails because he cannot satisfy the third element. Eikland argues that Green has no evidence to support a conclusion that she knew, at the time she prepared the conduct report, that Green had filed an inmate complaint about the October incident. Per Eikland, because Green cannot prove that she knew about the inmate complaint, it necessarily follows that his filing of the inmate complaint was not the but-for cause of her giving him the conduct report.

5

Interestingly, Eikland offers no evidence to support a conclusion that she did *not* know Green had filed an inmate complaint about the October incident. While it would have been easy enough for her to submit a declaration stating as much, she opted instead to only highlight that Green has no evidence to prove she *did* know about it. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (finding "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim"). Eikland points out that the institutional complaint examiner made no mention of interviewing Eikland as part of her investigation into Green's inmate complaint about the October incident. And, at his deposition, Green speculated that Eikland must have known about it because officers "all talk to each other . . . . They all know what's up." According to Eikland, Green's speculation that she must have heard about the inmate complaint from other officers is insufficient for a jury to reasonably conclude that she knew Green had filed an inmate complaint when she wrote the conduct report.

In response, Green points to Eikland's own comments as evidence that she knew he had filed an inmate complaint. Specifically, he argues that her comments to "file [his] dumb little lawsuit" and that she was "not worried about it" because she "do[es] her job" are enough for a jury to reasonably conclude that she knew about the inmate complaint. Indeed, Green asserts that it was after those comments that *he* finally understood why she was antagonizing him even though her supervisor had resolved all his issues. He states that her comments reasonably suggest that she was upset about him attempting to exhaust the administrative remedies in connection with the October incident, which she knew he had to do before filing a lawsuit.

At this stage, the Court must construe all reasonable inferences in the non-moving party's favor. While a close call, a jury could reasonably conclude that Eikland's alleged hostility *after*

6

Green's complaints about his medication and meals had been resolved coupled with her comments that he should go ahead and file a lawsuit because she does her job suggests that she knew he was either in the process of exhausting the administrative remedies or preparing to file a lawsuit about the October incident, both of which qualify as protected activity under the First Amendment. Accordingly, Eikland is not entitled to summary judgment on this basis.

2. **A jury could not reasonably conclude that Green filing an inmate complaint about Eikland was the but-for cause of her writing the conduct report.**

Eikland next argues that, even assuming she knew Green had filed an inmate complaint, his retaliation claim fails because no jury could reasonably conclude that his protected activity was the but-for cause of her writing the conduct report. Eikland stated in the conduct report that "Green then threw his bag meal out of the trap, hitting me in the upper left thigh area." She also stated that Green "was making threats stating he was going to take me down." She stated that, after she asked him if he meant he was going to assault her, he said "you think I'm going to beat you up? I'm going to do worse." After asking him if he was trying to scare her, the conduct report states that he said "I don't care if you're scared or not. I was never trying to make you scared of me. Do you think the people I killed were scared of me?" Eikland next asserts that she asked him if he was saying he was going to kill her, to which Green asked if she was daring him to do that. Finally, she noted that Green said, "I know you, Lange, and Manthei have a hit out on me. I'm not stupid! If I get beat up in the showers next time we have showers, I'm just going to curl up in a little ball and not fight back so I don't go to the hole. Then, you guys are going to have to retire early. I know what's going on because I'm gangsta." Dkt. No. 18-2 at 1.

Following the disciplinary hearing, at which Green stated that Eikland "is lying and making this all up," Green was found not guilty of §DOC 303.11 (assault), which requires that an inmate cause bodily harm to another or engage in a physical altercation with another person. The hearing

7

officer found that neither Eikland's description of her interaction with Green nor the hallway video supported a finding of assault because Green's lunch bag just barely touched Eikland's leg. However, Green was found guilty of Wis. Stat. §DOC 303.33 (disruptive conduct) for throwing his lunch bag out of his trap. Green was also found guilty of §DOC 303.18 (threats) because "inmates are not allowed to physically harm, harass or intimidate other people." And, finally, he was found guilty of §DOC 303.28 (disobeying orders) because after Green stated he was feeling suicidal he told Eikland "I'm not cuffing up or coming out. That shits dead, get a white shirt down here." Dkt. No. 18-2 at 5-6; *see also* Dkt. No. 19-1 at 10 ("So she's all oh, you suicidal, you going to come out? I'm like hell no, get the supervisor up here. So I made her get the supervisor up there.").

While it is unclear what role, if any, Green's inmate complaint about the October incident played in Eikland's decision to write Green a conduct report on November 24, 2023, no jury could reasonably conclude that she would not have written the conduct report but for Green submitting the inmate complaint. As the Supreme Court has explained, if the retaliation is not the but-for cause of the deprivation, "the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind. It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).

Green concedes and video confirms that he threw his dinner bag out of his trap because he was frustrated that it did not contain the correct meal. *See* Dkt. No. 19-1 at 11. He also concedes and video confirms that, although he did not intend to hit Eikland with the bag, he threw it with enough force that the bag went about two to three feet beyond his door and lightly hit Eikland in

8

Case 2:24-cv-00194-BHL    Filed 01/29/25    Page 8 of 11    Document 32

the leg. This conduct is consistent with Eikland's description in the conduct report and is the basis for him being found guilty of disorderly conduct. Obviously, inmates cannot recklessly throw items out of their cells simply because they are frustrated. Eikland therefore had a legitimate reason for giving Green a conduct report for this action.

Similarly, Green admits that after he initially told Eikland he was suicidal and she asked, "You going to come out?," he said "hell no, get the supervisor up here. So I made her get the supervisor up there." Dkt. No. 19-1 at 10. This is consistent with Eikland's statements in the conduct report, in which she noted that, after she took out her handcuffs and directed Green to turn around, he said, "I'm not cuffing up or coming out. That shits dead, get a white shirt down here." Dkt. No. 18-2 at 1. While the words are different, the sentiment is the same: Green refused to be handcuffed and instead forced Eikland to track down a supervisor. But inmates do not get to choose which orders they will obey. Allowing inmates to assert their authority over the institution places staff and other inmates in danger. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). Accordingly, Eikland was justified in writing Green a conduct report for his refusal to come out of his cell.

Finally, Green testified at his deposition that after Eikland told him to file his lawsuit, he said:

> I ain't going to do nothing to you. I said I ain't going to – I'm going to do worse than that. She's like oh, so, what, you going to kill me? I said what – why you asking – you seeming like you – like you attempting me to do something like that? She said, what, that's what you going to do? I said no, I'm going to do something worse. I'm going to come for your pocketbook. I'm going to come for your check. She's like all right, whatever. I said and I know you all got that hit on me. I said don't worry about it. I said I'm going to go to the showers too. I said I'm going to go to the showers and if anybody swings on me, take off on me, I said I'm going to ball up, just so I don't go to seg. And I bulls--- you not, I'm going to take you, Lange, and Manthi job. I'm going to – I'm coming for y'all job. I told her just like that.

9

Dkt. No. 19-1 at 10. In the conduct report, Eikland remembered this interaction with Green as follows:

> Inmate Green was making threats stating he was going to take me down. I asked inmate Green if he meant that he was going to assault me when he came out of his cell? Inmate Green said, 'you think I'm going to beat you up? I'm going to do worse.' I asked if he was trying to scare me by saying that and inmate Green said, 'I don't care if you're scared or not. I was never trying to make you scared of me. Do you think the people I killed were scared of me?' I then asked inmate Green if he was saying he was going to kill me and Green asked me if I was daring him to do that. Inmate Green also said, 'I know you, Lange, and Manthei have a hit out on me. I'm not stupid! If I get beat up in the showers next time we have showers, I'm just going to curl up in a little ball and not fight back so I don't go to the hole, Then, you guys are going to have to retire early. I know what's going on because I'm gangsta.'

Dkt. No. 18-2 at 1.

Again, although the words are not identical, the substance of the interaction as remembered by Green and Eikland is the same. Green made vague threats that Eikland sought to clarify. Green disabused her of her belief that he was threatening her physical well-being and clarified that he was threatening only her financial well-being. But, regardless of the object of his threats, the fact remains that he threatened Eikland, which was a sufficient basis for her to write a conduct report. Green insists that he was only highlighting his right to sue her, but his statements went far beyond him stating his intention to exercise his rights. He used his right to file a lawsuit to try to intimidate Eikland, letting her know he was "coming for her job." Given Green's own recollection of his statements to Eikland, the only reasonable conclusion is that Eikland had a legitimate basis for writing conduct report based on him trying to threaten or intimidate her.

In short, Green's own statements confirm that Eikland accurately described the substance of Green's actions in the conduct report. Accordingly, regardless of whether Eikland knew that Green had filed an inmate complaint about her a few weeks earlier, no jury could reasonably

10

conclude that the inmate complaint was the but-for cause of Eikland writing the conduct report. Green's retaliation claim therefore fails, and Eikland is entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for an extension of time to file her reply brief (Dkt. No. 26) is **GRANTED**, her motion for summary judgment (Dkt. No. 15) is **GRANTED,** and this action is **DISMISSED**. The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 29, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.